IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Donald H. Jenkins, #31663-018,           ) | C/A NO. 3:10-1968-CMC-JRM |
| ) | |
| Plaintiff,           ) | |
| ) | **OPINION and ORDER** |
| v.           ) | |
| ) | |
| Federal Bureau of Prisons, et al; Harley           ) | |
| Lappin, Director; Mr. Simmons, Food           ) | |
| Service Administrator; and Mr. Simon,           ) | |
| Cook Foreman,           ) | |
| ) | |
| Defendants.           ) | |
| _____) | |

This matter is before the court on Plaintiff's *pro se* complaint, filed in this court pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (B)(2)(d), DSC, this matter was referred to United States Magistrate Judge Joseph R. McCrorey for pre-trial proceedings and a Report and Recommendation ("Report"). On April 29, 2011, the Magistrate Judge issued a Report recommending that Defendants' motion to dismiss be granted. The Magistrate Judge advised Plaintiff of the procedures and requirements for filing objections to the Report and the serious consequences if he failed to do so. Plaintiff filed objections to the Report on May 12, 2011.

On July 19, 2011, the court directed Defendants to provide an affidavit or declaration relating to Plaintiff's efforts to exhaust administrative remedies. On August 2, 2011, Defendants timely responded by filing the Declaration of Jenifer G. Hollett (Hollett). Plaintiff was also given an opportunity to provide additional material he wished the court to consider relating to the exhaustion of administrative remedies, which he filed on August 5, 2011.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of any portion of the Report of the Magistrate Judge to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b).

After conducting a *de novo* review as to objections made, and considering the record, the applicable law, the Report and Recommendation of the Magistrate Judge, and Plaintiff's objections, the court agrees with the conclusions of the Magistrate Judge relating to the dismissal of Defendants Bureau of Prisons (BOP) and Harvey Lappin (Lappin). Accordingly, the court adopts and incorporates these portions of the Report and Recommendation by reference in this Order, and Defendants BOP and Lappin are dismissed from this matter without prejudice.

The Report also recommends dismissal of the remaining portion of this action for failure to exhaust administrative remedies or, in the alternative, that the remaining Defendants be granted qualified immunity. For the reasons discussed below, the court declines to adopt this portion of the Report.

### I. BACKGROUND

Plaintiff is a federal inmate, currently serving a 120-month sentence imposed in the United States District Court for the Middle District of Florida. At the time of the incident forming the basis of this lawsuit, Plaintiff was housed at FCI – Bennettsville.[1] As a result of an incident on September

---

[1] Plaintiff has since been moved to FCI – Talladega, Alabama.

24, 2007, Plaintiff received second and third degree burns over a significant portion of his body. He was promptly transported to the Augusta, Georgia, Burn Center and remained there until October 19, 2007. He thereafter filed a grievance relating to the incident, but his grievance was rejected by BOP officials as untimely.

On July 30, 2010, the Clerk of Court received Plaintiff's complaint for filing.[2] Plaintiff brought suit in this court pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), alleging that Defendants violated his constitutional rights and seeking, *inter alia*, compensatory and punitive damages.

On January 4, 2011, Defendants moved to dismiss this matter pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 19. Defendants asserted a variety of defenses relating to the sufficiency of Plaintiff's complaint, including, *inter alia*, that the complaint does not comply with Rule 8(a) because it fails to state a cause of action as to Defendants Simmons and Simon, that Plaintiff has failed to exhaust available administrative remedies, and that Defendants are entitled to qualified immunity.

## II. MOTION TO DISMISS PURSUANT TO FEDERAL RULE 12(B)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to seek dismissal based on a plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a 12(b)(6) challenge to the sufficiency of a complaint, this Rule must be applied in

---

[2]The postmark on the envelope in which Plaintiff's complaint arrived indicates Plaintiff mailed his complaint to the Court on July 22, 2010. ECF No. 1-2 at 1. The complaint is dated July 14, 2010. ECF No. 1 at 9. Because he is incarcerated, Plaintiff receives the benefit of the "prison mailbox rule." *See Houston v. Lack*, 487 U.S. 266 (1988). The court need not determine, however, which of the two dates Plaintiff's complaint is deemed to have been filed because Defendants have not raised any statute of limitations defense.

conjunction with the liberal pleading standard set forth in Federal Rule of Civil Procedure 8(a). Rule 8(a) requires: a jurisdictional statement, a demand for relief, and "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). As recently clarified by the United States Supreme Court, a 12(b)(6) motion should only be granted if the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Determining whether a complaint states on its face a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,' " as required by Rule 8. *Iqbal v. Ashcroft*, 556 U.S. ___, ___, 129 S. Ct. 1937, 1950 (2009) (alteration in original) (citation omitted) (quoting Fed.R.Civ.P. 8(a)(2)). The Court noted that even though Rule 8 "marks a notable and generous departure from the hyper-technical, codepleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*.

Complaints filed by individuals proceeding *pro se* are held to a less stringent standard than those drafted by attorneys, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case. *Erickson v. Pardus*, 551 U.S. 89 (2007).

In this matter, Plaintiff has presented a short plain statement of a claim showing he is entitled to relief. Plaintiff asserts that unsafe conditions existed in the kitchen of FCI – Bennettsville, that Defendants Simmons and Simon were aware of the unsafe conditions and did nothing to correct the

conditions, and that as a result of the unsafe conditions, he was injured.[3] Because complaints filed by individuals proceeding *pro se* are held to a less stringent standard than those drafted by counsel, and because this court is charged with liberally construing such complaints to allow the development of potentially meritorious cases, the court finds Defendants' motion to dismiss for failure to state a claim and/or failure to comply with Rule 8(a) should be **denied**.

### III. ADMINISTRATIVE REMEDIES

Defendants also have moved to dismiss, contending Plaintiff failed to exhaust administrative remedies in two ways. First, Defendants maintain Plaintiff failed to *properly* exhaust his available administrative remedies. Second, Defendants contend Plaintiff failed to exhaust *the particular issue* for which he now seeks redress; that is, that the grievance he filed did not assert that Defendants Simmons and Simons were aware of the alleged dangerous conditions in the kitchen at FCI – Bennettsville, failed to take corrective action, and ordered that he (and others) fill the 55-gallon plastic barrel with hot water on the day in question, which ultimately resulted in Plaintiff's injuries.

### A. 42 U.S.C. § 1997

Under the Prison Litigation Reform Act of 1995 ("PLRA"), prisoners must exhaust "such administrative remedies as are available" prior to filing suit in federal court challenging prison conditions. 42 U.S.C.A. § 1997e(a). "[T]he PLRA's exhaustion requirement is mandatory," *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 677 (4th Cir. 2005), and "applies to all

---

[3] Plaintiff also contends that Defendants Simmons and Simon directed him (and others) to move a barrel of hot water, resulting in his injury. However, this contention is not contained in the complaint but rather in his response to Defendants' motion to dismiss. *See* ECF No. 22 at 2 (filed Feb. 3, 2011). A complaint cannot be amended by a brief in opposition to a motion to dismiss. *Mylan Laboratories, Inc. v. Akzo*, *N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991). Plaintiff has not moved to amend his complaint to assert this contention. However, Defendants have not answered, nor has there been any timetable established for pretrial proceedings in this matter.

inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Pursuant to § 1997e(a), the exhaustion requirement is applicable to *Bivens* claims. *See Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1214 (10th Cir. 2003), abrogated on other grounds by *Jones v. Bock*, 549 U.S. 199 (2007); *Booth v. Churner*, 206 F.3d 289, 291 (3d Cir. 2000).

An inmate's failure to exhaust administrative remedies is an affirmative defense. *Jones*, 549 U.S. at 216. Accordingly, Defendants "must demonstrate that [ ] administrative remedies were 'available' to [Plaintiff], meaning not only that [Plaintiff] had access to [the] administrative grievance process . . . , but also that he was actually *capable* of filing such a grievance." *Braswell v. Corrections Corp. of America*, 419 F. App'x 622, 625 (6th Cir. 2011) (emphasis in original).

"[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). Thus, "when prison officials prevent inmates from using the administrative process . . . , the process that exists on paper becomes unavailable in reality." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006); *see also Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003) (holding that district court erred in failing to consider prisoner's claim that he was unable to submit a grievance, and therefore lacked available administrative remedies, because prison employees refused to provide him with the necessary forms); *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001) (finding administrative remedy rendered unavailable when prison officials prevent prisoner from using it). Therefore, the court is "obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007).

Conversely, a prisoner does not exhaust all available remedies when he fails to follow required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id*. at 88. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

### B. FAILURE TO PROPERLY EXHAUST

Defendants maintain that Plaintiff failed to properly exhaust his administrative remedies in not appealing the rejection of his BP-10 to the "national level."[4] Decl. of Jenifer G. Hollett (hereinafter "Hollett Decl.") at ¶ 4 (ECF No. 39-1, filed Aug. 2, 2011). Plaintiff argues he was prevented from exhausting his available administrative remedies by BOP officials.

Viewed in the light most favorable to Plaintiff, the facts are that as a result of an incident on September 24, 2007, Plaintiff received second and third degree burns over a significant portion of his body. He was promptly transported to the Augusta, Georgia, Burn Center and remained there until October 19, 2007. While at the Burn Center, he underwent a skin graft on his right hand, and

---

[4]The BOP grievance process is set forth at 28 C.F.R. § 542.13-.15. First, an inmate normally must present his complaint informally to prison staff using a BP-8 form. If the informal complaint does not resolve the dispute, the inmate may make an "Administrative Remedy Request" to the prison Warden using a BP-9 form. The BP-8 and BP-9 forms are linked. Both forms involve a complaint arising out of the same incident and both must be submitted within twenty calendar days of the date of that incident. 28 C.F.R. § 542.14(a). If the Warden renders an adverse decision on the BP-9, the inmate may appeal to the Regional Director within twenty calendar days of the date the Warden signed the response, using a BP-10 form. 28 C.F.R. § 542.15(a). The inmate may appeal an adverse decision by the Regional Director to the Central Office of the BOP using a BP-11 form. *Id*.

7

he thereafter "could not . . . write . . . ." Compl. at 7 (ECF No. 1, filed July 30, 2010). Upon return to FCI – Bennettsville, Plaintiff obtained a BP-8 form from staff on November 1, 2007. ECF No. 1-1 at 19. Bandages were removed from Plaintiff's hand on November 6, 2007. *Id.* at 9. Plaintiff returned the BP-8 to staff on November 8, 2007. *Id.* This was the twentieth (20th) day after Plaintiff's release from the Augusta Burn Center. On November 13, 2007, staff provided Plaintiff with a response to the BP-8, indicating that

> the deadline for completion of an informal resolution and submission of a formal written administrative remedy request, on the appropriate form (BP-9), is 20 calendar days following the date on which the basis of the request occurred. You have had plenty of time after your accident to file a BP-8.

*Id.* The BP-8 indicates that staff provided Plaintiff a BP-9 form on November 18, 2007. There is no explanation in the record why there was a delay of five (5) days in giving Plaintiff a BP-9 form upon rejection of his BP-8.[5]

Plaintiff's exhibits include a BP-9 form dated November 20, 2007, which Plaintiff forwarded to the Warden. Plaintiff contends that this BP-9 was never answered. *See* Compl. at 7.[6] However, Plaintiff thereafter sought review at the Regional Level via a BP-10 form dated December 6, 2007, contending that he was appealing "the wardens [sic] decision to time bar me on November 26, 2007." ECF No. 1-1 at 22.

On December 28, 2007, the Administrative Remedy Coordinator of the Southeast Regional Office sent Plaintiff a "Rejection Notice," indicating that he "must first file a BP-9 request through

---

[5]Inmates obtain these forms from BOP staff. *See* 28 C.F.R. § 542.14(c)(1) ("The inmate shall obtain the appropriate form from . . . institution staff . . . .").

[6]Defendants maintain that the BP-9 was submitted on November 26, 2007, and rejected as untimely that same day. Hollett Decl. at ¶ 9 & Ex. A at 2.

8

the institution for the Warden's review and response before filing an appeal at this level." ECF No. 1-1 at 25. Upon receiving the "Rejection Notice," Plaintiff returned to "Counselor Cox" and Cox told him "that they are not going to answer the BP-9 and as f[a]r as he was concer[n]ed he was [through] with it and the only thing left for [Plaintiff] to do is to file a Tort Claim." Obj. at 3 (ECF No. 35, filed May 12, 2011).

The court finds for the reasons below that Plaintiff has sufficiently alleged that prior to filing the instant *Bivens* action, he exhausted the administrative remedies that were available to him.

First, Plaintiff's injury and resulting hospitalization and incapacitation should not have been counted against him by BOP officials. That is, Plaintiff's "personal inability to access the grievance system render[ed] the system unavailable." *Days v. Johnson*, 322 F.3d 863, 867 (5th Cir. 2003), overruled by implication on other grounds, *Jones. v. Bock*, 549 U.S. 199 (2007). In *Days*, the Fifth Circuit held that administrative remedies are deemed unavailable when: (1) an inmate's untimely filing of a grievance is due to physical injury; and (2) the grievance system rejects his subsequent attempt to exhaust his remedies based on the untimely filing of the grievance. *Days*, 322 F.3d at 868. *See also Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008) (excusing a left-handed prisoner with a broken left arm from having to exhaust his remedies because he was unable to fill out a grievance form).

Courts applying the *Days* test have required that once the inmate is no longer inhibited by his injury, he must file a grievance and be denied before the remedies will be deemed unavailable. *See*, *e.g.*, *Chavez v. Thorton*, No. 05-CV-00607, 2008 WL 2020319, at *5 (D. Colo. May 9, 2008) (citing *Days*, 322 F.3d at 867-68); *Baker v. Schriro*, No. CV 07-0353-PHX-SMM (JRI), 2008 WL 622020, at *5 (D. Ariz. Mar. 4, 2008); *Macahilas v. Taylor*, No. CIV S-06-0502, 2008 WL 220364,

9

at *3 (E.D. Cal. Jan.25 2008) (citing *Days*, 322 F.3d at 867-68); *Mingliton v. Wright*, No. 7:06-CV-026-R, 2007 WL 1732388, at *2 (N.D. Tex. June 14, 2007) (same); *Benfield v. Rushton*, No. 8:06-2609-JFA-BHH, 2007 WL 30287, at *4 (D.S.C. Jan. 4, 2007) (same).

In this case, Plaintiff filed his BP-8 on November 8, 2007, the twentieth day after his release from the hospital. Prison authorities responded that

> the deadline for completion of an informal resolution and submission of a formal written administrative remedy request, on the appropriate form (BP-9), is 20 calendar days following the date on which the basis of the request occurred. You have had plenty of time *after your accident* to file a BP-8.

ECF No. 1-1 at 19 (emphasis added). Therefore, it appears BOP officials determined the twenty days for informal resolution and submission of a BP-9 began running on the date of the incident despite the fact that Plaintiff was hospitalized with serious injuries for twenty-six (26) days, and during that time underwent a skin graft on the hand with which he writes. *See* ECF No. 1-1 at 13. Moreover, Plaintiff's medical records indicate that Plaintiff's hand was bandaged until November 6, 2007, two days before he submitted the BP-8. *See id*. at 9.

Additionally, when Plaintiff attempted to comply with the directive in the "Rejection Notice," Cox told him "that they are not going to answer the BP-9 and as f[a]r as he was concer[n]ed he was [through] with it . . . ." Obj. at 3. Therefore, Plaintiff's attempt to properly exhaust his available administrative remedies and to comply with the Rejection Notice was further thwarted by actions of BOP staff, thereby making the administrative remedy process "unavailable in reality." *Kaba*, *supra*, 458 F.3d at 684.

Third, it is not the PLRA, but the BOP's own regulations which govern the administrative remedies which Plaintiff was to have exhausted. These regulations are contained in the Code of Federal Regulations (CFR) at 28 CFR §§ 542.13-.15.[7]

Defendants cite § 542.14(a) for the proposition that Plaintiff's BP-9 was untimely, as "[t]he deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request, on the appropriate form (BP–9), is 20 calendar days following the date on which the basis for the Request occurred." 28 C.F.R. § 542.14(a).[8] However, 28 CFR § 542.14(b) provides that

> Where the inmate demonstrates a valid reason for delay, an extension in filing time may be allowed. In general, valid reason for delay means a situation which prevented the inmate from submitting the request within the established time frame. Valid reasons for delay include the following: an extended period in-transit during which the inmate was separated from documents needed to prepare the Request or Appeal; an extended period of time *during which the inmate was physically incapable of preparing a Request or Appeal* . . . .

(Emphasis added.) The CFR specifically provides for an extension of time if a grievant can demonstrate a valid reason for delay. The record as it now exists does not indicate whether Plaintiff was given an opportunity to demonstrate "a valid reason for delay."

Fourth, On August 2, 2011, Defendants submitted the Declaration of Jenifer G. Hollett (Hollett), a Senior Attorney for the Bureau of Prisons. Hollett declares that BOP records indicate Plaintiff submitted his BP-9 to the Warden on November 26, 2007, and it was rejected (apparently

---

[7]See note 4, *supra*.

[8]While November 8 was indeed the twentieth day after his release from the hospital, there is no explanation provided why it took five days for authorities to provide a response to Plaintiff, why these five days were counted against the overall 20-day time period, or why he was not given a BP-9 form the same day his BP-8 was rejected.

11

that same day) as untimely.  Hollett Decl. at ¶ 9 & Ex. A at 2.  Hollett avers that "[g]iven that the institution level grievance was rejected due to untimeliness, there is no response from the Warden that would have been prepared.  The only documentation of the rejection would be the rejection notice provided to inmate Jenkins."  *Id*. at ¶ 11.  However, the rejection of a BP-9 for untimeliness must be a "response" appealable to the next administrative level.  Indeed, if Plaintiff had not thereafter attempted to file a BP-10, Defendants would likely argue that he had failed to exhaust his remedies by not filing a BP-10.

Finally, Defendants contend Plaintiff's failure to "appeal" the "Rejection Notice" dated December 28, 2007, to the "national level, which is the required final level of agency review" is fatal to the survival of his complaint in this court.  Mot. to Dism. at 10 (ECF No. 19) & Hollett Decl. at ¶ 4 ("A grievance is not exhausted until it is filed at the national level.").  However, the Rejection Notice is devoid of any direction that dissatisfaction with the rejection is to be appealed.  Indeed, the Rejection Notice specifically directs that Plaintiff "must first file a BP-9 request through the institution for the Warden's review and response before filing an appeal at this level."  ECF No. 1-1 at 25.  Copies of other standard BOP forms in the record (BP-9, BP-10) indicate that if a grievant is dissatisfied with "this response," he may "appeal to" the Regional Director or General Counsel, respectively.  *See*, *e.g.*, ECF No. 1-1 at 20, 22.  This is what Plaintiff attempted to do in filing a BP-10.  Yet because the Warden's rejection for untimeliness is not, for some reason, deemed a "response," Plaintiff's BP-10 was rejected.

For the above reasons, the court finds that Plaintiff has sufficiently alleged that he exhausted the administrative remedies personally available to him, as the BOP administrative remedy was not available to him because he was "prevented from availing himself of it."  *Moore*, *supra*, 517 F.3d at

725. Therefore, Defendants' motion to dismiss for failure to properly exhaust administrative remedies is **denied**.

### C. FAILURE TO EXHAUST PARTICULAR ISSUE

Defendants' second contention regarding Plaintiff's purported failure to exhaust adminstrative remedies is that Plaintiff failed to exhaust the "issue he now seeks to litigate." Mot. to Dism at 12. ECF No. 19. Defendants provide no authority or citation to any pleading requirement contained in the BOP administrative remedy program in support of their argument.

The exhaustion requirement of the PLRA is interpreted in light of its purposes, which include the goal of giving officials "time and opportunity to address complaints internally," *Porter v. Nussle*, 534 U.S. 516, 525 (2002). In *Jones v. Bock*, *supra*, the Supreme Court held that "it is a prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." 549 U.S. at 218. While the PLRA requires prisoners exhaust "such administrative remedies as are available," 42 U.S.C. § 1997e(a), "nothing in the statute imposes a 'name all defendants' requirement . . . ." *Jones*, 549 U.S. at 217. While barring federal claims against defendants who had not been named in prior grievances might "promote early notice to those who might later be sued[,]" *Id*. at 923, the Court noted that promoting such notice "has not been thought to be one of the leading purposes of the [PLRA's] exhaustion requirement," which the Court identified as "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Id*. That is, "one 'exhausts' processes, not forms of relief." *Booth v. Churner*, 532 U.S. 731, 739 (2001).

In *Moore v. Bennette*, 517 F.3d 717 (4th Cir. 2008), the Fourth Circuit determined that a prisoner's failure to name specific individuals in a grievance did not preclude a later § 1983 suit against these individuals because the prison's grievance system did not require the inmate to identify specific individuals in his grievances. 517 F.3d at 726. The court noted that the grievance system "requires only that a grievance be submitted on [a particular form], which does not require identification of the persons responsible for the challenged conduct." *Id. See also Olivares v. United States*, __ F. App'x __, 2011 WL 3489300 at *3 (3d Cir., Aug. 10, 2011) ("When determining whether a prisoner put prison officials on notice of a particular problem, we look to the extent of a prisoner's compliance with the prison's grievance procedures.").

In response to the Order filed July 19, 2011, Plaintiff submitted a copy of 28 CFR §§ 542.11-.19. ECF No. 40-1 at 2-3 (filed Aug. 5, 2011). Bureau of Prisons' procedure provides that a grievant "shall place a single complaint or a reasonable number of closely related issues" on the form for submission to BOP staff. 28 C.F.R. § 542.14(c)(2). The BOP expects "unrelated" issues to be grieved separately. *Id*. The CFR contains no "name all individuals" requirement.

The BP-8 form submitted by Plaintiff indicated that he was to list a "Specific Complaint and Requested Relief." ECF No. 1-1 at 19. The BP-9 simply provides a space for "Inmate Request." *Id*. at 20. On the BP-8, Plaintiff indicated that "[d]ue to the *unsafe conditions in the kitchen*, I was severely burned. I have 22% of my body burn[ed]. *Because of unsafe conditions in the kitchen*." *Id.* at 21 (emphasis added). Plaintiff indicated that he wished

> to have all of the following issues corrected . . . . No more further use or useage of any unsecured containers[] to transport large (55 gal) trash cans across slipp[ery] floor to pots and pans area. . . . I would like to see the 'heater' on the pots and pans sink fixed, the workers tried to fix it befor[e] my injur[y] but attempt to fix was unsuccessful.

14

*Id*. He indicated that he was "requesting that F.C.I. Bennettsville take a serious approach towards rectifying the *various problems which [p]ersist in the kitchen* by implementing additional safety measures . . . ." ECF No. 1-1 at 20 (emphasis added).

In his complaint, Plaintiff expands the information presented in his grievance to contend that not only was he injured due to unsafe conditions in the kitchen, but that Defendants Simmons and Simon knew of the purported unsafe conditions, and that they "instructed the pots and pan[s] crew ([Plaintiff] being one of them [ )] to put hot water in the Red 55 gallon Plastic trash can . . . ." Compl. at 5.

The only mandatory language in the CFR goes to the grouping or separating of "complaints" onto single or multiple forms. While the BP-8 indicated that Plaintiff should include "Requested Relief," the CFR includes no requirement relating to naming particular defendants.

In this instance, Plaintiff's grievance contends he was injured on September 24, 2007, due to certain unsafe conditions in the kitchen. A grievance relating to a specific injury, on a specific date, arising from unsafe institutional conditions which he contended "persist," would put BOP authorities on notice that Plaintiff may have been injured based upon existing and persistent unsafe conditions for which it (as custodian of Plaintiff) and its employees may have been responsible. Any investigation would presumably have resulted in interviews of at least one, if not both, of the individuals Plaintiff now names as Defendants. However, BOP officials determined Plaintiff's grievance was untimely, and there is nothing in the record to indicate that any investigation was undertaken.

For these reasons, it cannot be said Plaintiff failed to exhaust the particular issue he brings in the current *Bivens* action. Therefore, for these reasons, Defendants' motion to dismiss for failure to exhaust the issues contained in Plaintiff's complaint is also **denied**.

### IV. QUALIFIED IMMUNITY

Defendants also moved to dismiss based upon qualified immunity. The Report recommends granting qualified immunity to Defendants Simmons and Simons, the remaining two defendants. The court **denies** without prejudice the motion to dismiss based upon qualified immunity as to Simmons and Simons. As pleaded, Plaintiff's complaint contains factual allegations which, taken as true, indicate both Defendants Simmons and Simons knew of and disregarded a substantial risk of serious harm to inmates, which resulted in Plaintiff's injury. Therefore, Plaintiff's allegations are sufficient to survive a motion to dismiss.[9]

---

[9] Whether Plaintiff ultimately is able to establish liability as to Defendants Simmons and/or Simon is a factual issue ordinarily not properly disposed of by a motion to dismiss. To establish a claim under the Eighth Amendment, a prisoner must satisfy two elements. First, the deprivation alleged must be, objectively, "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). "[T]o demonstrate such an extreme deprivation, a prisoner must allege a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions." *Id.* (internal quotation marks and citation omitted).

Second, a prisoner must present evidence that the prison officials had a " 'sufficiently culpable state of mind.' " *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson*, 501 U.S. at 297). When an inmate challenges the conditions of his confinement under the Eighth Amendment, the requisite "state of mind is one of deliberate indifference to inmate health or safety." *Id.* (quotation and citation omitted). A prison official shows deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "In addition, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted. A prison official's duty under the Eighth Amendment is to ensure reasonable safety." *Id.* at 844 (internal quotation marks omitted).

16

### V. CONCLUSION

Defendants BOP and Lappin are dismissed from this matter without prejudice. The remaining Defendants' motion to dismiss is **denied**.

This matter is returned to the Magistrate Judge for further pretrial proceedings, including the entry of a scheduling order to include a deadline for the filing of dispositive motions.

**IT IS SO ORDERED.**

s/ Cameron McGowan Currie<br>
CAMERON McGOWAN CURRIE<br>
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
September 26, 2011