IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| DONALD H. JENKINS,   #31663-018,<br><br>Plaintiff,<br><br>vs.<br><br>MR. SIMMONS, FOOD SERVICE<br>ADMINISTRATOR; AND<br>MR. SIMON, COOK FORMAN,<br><br>Defendants. | ) Civil Action No.  3:10-1968-CMC-JRM<br>)<br>)<br>)<br>) **REPORT AND RECOMMENDATION**<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Plaintiff filed this action, pro se, on July 30, 2010.[1] He is currently an inmate at the Federal Correctional Institution in Talladega, Alabama. At the time of the alleged incidents, he was an inmate at the Federal Correctional Institution in Bennettsville, South Carolina ("FCI-Bennettsville"). On September 26, 2011, the Honorable Cameron M. Currie, United States District Judge, granted Defendants' motion to dismiss (Doc. 19) in part and denied the same in part. See Doc. 42. The remaining Defendants in this action are FCI-Bennettsville Food Service Administrator Mr. Simmons ("Simmons") and FCI-Bennettsville Cook Foreman Mr. Simon ("Simon"). Defendants filed a motion for summary judgment on November 30, 2011. Plaintiff, because he is proceeding pro se, was advised on December 1, 2011, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion to dismiss could result in the dismissal of his complaint. Plaintiff filed a response on December 27, 2011, and Defendants filed a reply on January 5, 2012.

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02 (B)(2) DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the court.

**STANDARD OF REVIEW**

Pro se complaints are held to a less stringent standard than those drafted by attorneys, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.1978), and a court is charged with liberally construing a complaint filed by a pro se litigant to allow for the development of a potentially meritorious case. See Hughes v. Rowe, 449 U.S. 5, 9 (1980). The requirement of liberal construction, however, does not mean the court can ignore a clear failure to allege facts which set forth a claim currently cognizable in a federal district court. Weller v. Dep't. of Soc. Servs., 901 F.2d 387 (4th Cir.1990).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). The moving party "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If the moving party carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson, 477 U.S. at 247-48).

**DISCUSSION**

Plaintiff, who appears to allege an Eighth Amendment claim, appears to have brought his claims pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 397 (1971). In Bivens, the Supreme Court established a direct cause of action under the Constitution of the United States against federal officials for the violation of federal constitutional

rights. A Bivens claim is analogous to a claim under 42 U.S.C. § 1983: federal officials cannot be sued under 42 U.S.C. § 1983 because they do not act under color of state law. See Harlow v. Fitzgerald, 457 U.S. 800, 814-820 & n. 30 (1982). Harlow, which is often cited for the principle of the qualified immunity of state officials for acts within the scope of their employment, was brought against a federal official. In footnote 30 of the opinion in Harlow, the Supreme Court stated that Harlow was applicable to state officials sued under 42 U.S.C. § 1983. In other words, case law involving § 1983 claims is applicable in Bivens actions and vice versa. Farmer v. Brennan, 511 U.S. 825 (1994); see also Mitchell v. Forsyth, 472 U.S. 511, 530 (1985); Osabutey v. Welch, 857 F.2d 220, 221-223 & n. 5 (4th Cir. 1988).

While incarcerated at FCI-Bennettsville, Plaintiff had a job as a kitchen worker. He appears to allege that Defendants knew of unsafe conditions in the kitchen. Plaintiff and other inmates were tasked with cleaning dirty chicken pans. The hot water spout in the dish or "slop" sink was broken. In his Complaint, Plaintiff claims that Defendants Simmons and Simon instructed the pots and pan crew to put hot water in a fifty-five gallon plastic trash can to soak the pans to make them easier to clean. Plaintiff heated water in a tilt skillet and poured it into the trash can. He claims he had to heat the water in the tilt skillet because the hot water spout in the dish sink was broken. After Plaintiff put hot water in the trash can, he began to drag it to where the pots and pan were in the dish room. Plaintiff claims that the kitchen floor was slippery because of chicken grease on the floor. He lost his footing and pulled the trash can (which was made of thin plastic and was soft and buckled from the hot water) over on himself. Plaintiff received second and third degree burns over twenty-two percent of his body and was taken to a hospital in Augusta, Georgia where he remained for twenty-four days. Plaintiff claims he has scars as a result of the incident. Complaint at 5-6.

Plaintiff appears to allege that Defendants violated his constitutional rights when they failed to protect him from harm from a workplace accident. He requests monetary damages.[2] See Complaint at 9. Defendants contend that their motion for summary judgment should be granted because: (1) this action should be dismissed because Plaintiff has not exhausted his administrative remedies;[3] (2) Defendants Simmons and Simon are entitled to qualified immunity; (3) supervisory liability does not attach to Defendant Simmons; and (4) Plaintiff has a remedy through the Inmate Accident Compensation Program.[4]

---

[2]The United States cannot be sued without its consent, and consent is a prerequisite to a suit against the United States. United States v. Mitchell, 463 U.S. 206, 212 (1983). A Bivens action may not be brought against agencies or departments of the United States. FDIC v. Meyer, 510 U.S. 471, 486 (1994) (declining to extend Bivens remedy to federal agencies). The bar of sovereign immunity cannot be avoided by naming officers or employees of the United States as defendants. Gilbert v. Da Grossa, 756 F.2d 1455, 1458 (9th Cir. 1985); cf. Hawaii v. Gordon, 373 U.S. 57, 58 (1963). Claims against Defendant in their official capacities, to the extent that Plaintiff is seeking monetary damages, are barred by the doctrine of sovereign immunity. See Hagemeier v. Block, 806 F.2d 197, 202 (8th Cir. 1986), cert. denied, 481 U.S. 1054 (1987); Gilbert, 756 F.2d at 1458. Thus, this Court lacks subject matter jurisdiction as to the Bivens' claims for monetary damages against Defendants Simmons and Simon in their official capacities.

[3]Defendants previously argued (in their motion to dismiss) that this action should be dismissed because Plaintiff failed to exhaust his administrative remedies. Judge Currie found that Plaintiff sufficiently alleged that he exhausted the administrative remedies that were available to him. See Doc. 41 at 9-13.

[4]Plaintiff may have a remedy under the Inmate Accident Compensation Program ("IAC"). 18 U.S.C. § 4126, see also 28 C.F.R. § 301.101 et seq. The IAC provides for the compensation of federal inmates who have suffered injuries "in any industry or in any work activity in connection with the maintenance or operation of the institution in which the inmates are confined." 18 U.S.C. § 4126. Defendants provide that Plaintiff has already been compensated for lost wages due to his injury. See Defendants' Motion for Summary Judgment, Ex. G (Safety Committee Review) and Ex. H (Lost Time Paysheet). Plaintiff may also be eligible for compensation for work-related physical impairment. 28 U.S.C. § 301.301. This compensation cannot be paid until after an inmate is released. 28 C.F.R. § 301.301(a). The IAC provides information on when and what Plaintiff must submit to claim such benefits. See 28 C.F.R. § 301.303.

1. <u>Supervisory Liability</u>

Defendant Simmons contends that liability in a <u>Bivens</u> case cannot be premised upon a respondeat superior theory and Plaintiff has not shown a basis to hold him liable under a theory of supervisory liability. The doctrine of respondeat superior generally is inapplicable to § 1983 and <u>Bivens</u> actions, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. See <u>Monell v. Department of Social Servs.</u>, 436 U.S. 658, 694 (1978); <u>Fisher v. Washington Metro Area Transit Auth.</u>, 690 F.2d 1133, 1142-43 (4th Cir. 1982); <u>Wright v. Smith</u>, 21 F.3d 496 (2d Cir. 1994). Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. <u>Slakan v. Porter</u>, 737 F.2d 368 (4th Cir. 1984), <u>cert. denied</u>, <u>Reed v. Slakan</u>, 470 U.S. 1035 (1985).

Simmons' motion for summary judgment should be granted because Plaintiff has based his claims against Simmons on a theory of supervisory liability. Plaintiff alleged in his Complaint that Simmons (with Simon) instructed kitchen workers to put hot water in the red 55 gallon plastic trash can. During his deposition, however, in response to the question of what the food service administrator (Simmons) did or said to Plaintiff such that Plaintiff needed to sue Simmons, Plaintiff said he never talked to Simmons, but that Simmons was supposed to know everything that was going on in the kitchen. Simmons Dep. 106-107.[5]

---

[5] Even if Plaintiff's allegations in his Complaint are taken as true, Defendant Simmons is entitled to qualified immunity, as discussed below.

5

2. Qualified Immunity

Defendants contend that they are entitled to qualified immunity because Plaintiff did not assert in his Complaint that any constitutional right was violated. They further argue that, to the extent that Plaintiff's claims are interpreted as an Eighth Amendment claim, Plaintiff has raised at most a claim of negligence which does not state a constitutional claim. In his opposition memorandum, Plaintiff appears to argue that he has shown an Eighth Amendment violation because Defendants knew about the problem with the dish sink and did not have maintenance workers there to fix the problem, and Defendants were deliberately indifferent because they should have known that a serious danger was imminent when hot water was placed into anything plastic. Plaintiff's Opp. Mem. at 9-11.

The analysis of the defense of qualified immunity is generally examined using a two-step analysis. See Saucier v. Katz, 533 U.S. 194, 201 (2001).[6] The first step is to determine whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the defendants' conduct violated a constitutional right. Id. at 201. If the facts, so viewed, do not establish a violation of a constitutional right, the plaintiff cannot prevail, and "there is no necessity for further inquiries concerning qualified immunity." Id. If, however, a favorable view of the facts does establish such a violation, the next step is to determine whether the right violated was clearly

---

[6]The Supreme Court has clarified that these steps do not need to be taken in the sequence set forth in Saucier, and that:
> [t]he judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs should be addressed first in light of the circumstances in the particular case at hand.

Pearson v. Callahan, 555 U.S. 223, 236 (2009).

6

established at the time of the alleged offense.  Id.  If the right was not clearly established, the defendants are entitled to qualified immunity.  Id.

Plaintiff appears to allege that Defendants violated his Eighth Amendment rights.  It is recommended that Defendants' motion for summary judgment be granted because, in the light most favorable to Plaintiff, Plaintiff fails to show that Defendants' conduct violated his constitutional rights, as discussed below.

To establish a claim under the Eighth Amendment, a prisoner must show that the deprivation is "sufficiently serious"[7] and that prison officials had a "sufficiently culpable state of mind."  Wilson v. Seiter, 501 U.S. 294, 297-298 (1991).  Deliberate or callous indifference on the part of prison officials to a specific known risk of harm states an Eighth Amendment claim.  Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987).  Not every injury suffered by one inmate at the hands of other inmates, however, translates into constitutional liability for the prison officials responsible for the victim's safety.  See Farmer v. Brennan, 511 U.S. at 835.  In Farmer, the Supreme Court defined deliberate indifference, holding that "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  Id. at 847.  The test is not whether an official knew or should have known of the possibility of harm, but whether he did, in fact, know of it and consciously disregard that risk.  "[T]he official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id. at 837.  While the objective information known to the official may

---

[7]The parties do not appear to dispute that the alleged deprivation is sufficiently serious.

be used to infer the knowledge he actually had, and to draw inferences about his actual state of mind, those inferences are not conclusive.

Defendants are entitled to qualified immunity because Plaintiff fails to show that Defendants violated his Eighth Amendment rights. Plaintiff appears to allege that the failure of Defendants to repair the hot water spout in the dish sink rises to the level of deliberate indifference. Plaintiff has not offered evidence that Defendants acted with the requisite "culpable state of mind" in failing to repair the hot water spout. Here, there is no indication that a reasonable person would have known that the failure to repair the hot water spout would clearly constitute cruel and unusual punishment. "To convert conduct that does not even purport to be punishment into 'cruel and unusual punishment,' defendants must demonstrate more than ordinary lack of due care for the prisoner's interests or safety. Arnold v. South Carolina Dep't of Corrs., 843 F.Supp. 110, 113 (D.S.C. 1994)(citing Whitley v. Albers, 475 U.S. 312, 319 (1986)).

Defendant Simon states that water temperature is checked several times a day, and that if the water temperature is not at 110 to 120 degrees, he notifies the Food Service Administrator or Assistant Administrator so a work order can be submitted to get the problem fixed, and arrangements are made to use hot water from another sink until the sink in question is repaired. Simon Aff., Para. 6. Simmons states that water temperature is checked several times a day to ensure that it is between 110 and 120 degrees (the necessary temperature to properly clean and sanitize food service equipment); if he learns of a problem with the water temperature, he submits a work order to SCDC's Facilities Department to have the situation repaired; inmates are directed to use another sink until the problem is repaired; and facilities staff are very good about making repairs quickly. Simmons Aff.,

Para. 5. Plaintiff fails to show that Defendants demonstrated more than ordinary lack of due care for his interests or safety.[8]

Plaintiff also appears to allege that Defendants violated his Eighth Amendment rights because he was directed to place hot water from the skillet pan into the trash can and to put the pots and pans in the trash can to soak.[9] This, too, fails to rise to the level of deliberate indifference. Simmons states that he was not present at the time of the incident (as it occurred at approximately 6:30 a.m., prior to his 7:30 a.m. time to report to work); he does not recall having any interaction with Plaintiff; and he recalls a conversation with some inmates in which he told them to soak dirty pans in hot (not boiling) water to loosen debris and make them easier to clean, use the steam kettles or tilt skillets (but not to get it too hot as it would bake the food onto the pans and make it harder to clean), soak the pans in steam kettles or tilt skillets, and take the pans to the pot and pan area for washing and sanitizing. He states he, on occasion, saw inmates use the red 55 gallon food grade can next to the pots and pans sinks to soak pans, but the inmates filled the can with tap water (that does not exceed

---

[8]Additionally, it appears that whether the Eighth Amendment even applies to work-related prison injuries resulting from malfunctioning equipment is questionable such that Defendants would be entitled to qualified immunity on the ground that it has not been clearly established that the right to properly functioning equipment is of a constitutional magnitude. See Arnold, 843 F.Supp. at 114 (noting that even if the plaintiff offered evidence that being forced to work with a malfunctioning pot was cruel and unusual punishment, the defendants would be entitled to qualified immunity on the ground that it was not clearly established that the right to properly functioning equipment is of a constitutional magnitude).

[9]In his memorandum in opposition to summary judgment, Plaintiff contends that Simmons and Simon directed him (and others) to move the trash can to the dish area, causing his injury. This contention is not contained in the Complaint, as was brought to Plaintiff's attention in both the undersigned's April 2011 Report and Recommendation and Judge Currie's September 2011 Order. A complaint cannot be amended by a brief in opposition to a motion to dismiss. Mylan Labs., Inc. v. Akzo, N.V., 770 F. Supp. 1053, 1068 (D. Md. 1991). Plaintiff did not move to amend his Complaint to assert this contention.

120 degrees) and did not attempt to move the can while it held water. Simmons states that he did not instruct inmates to fill a plastic 55 gallon trash can with hot water from the tilt skillet and drag it across to the pots and pan sinks, and did not ever see an inmate do such. He further states that he has specifically instructed inmates not to use plastic containers to transport any type of hot liquids. Simmons Aff., Paras. 2, 4-10. Defendant Simon states that he was assigned to and was working at the satellite Prison Camp (physically separate from the site where Plaintiff worked) on the date of the alleged incident and did not witness the incident, he never instructed any inmate to heat water and put it in a 55 gallon plastic trash can, he never instructed inmates to drag a 55 gallon trash can filled with hot water across the floor, he has never seen an inmate fill a 55 gallon trash can with hot water from the skillet and transport the trash can by dragging it across the kitchen floor, and he has specifically instructed inmates not to use plastic containers to transport any type of hot liquids. Simon Aff., Paras. 2-5, 7-9.

Viewing the facts in the light most favorable to Plaintiff, Defendants directed him to heat water in a skillet pan, put the water in a plastic trash can, and soak the pans so that they would be easier to clean. Plaintiff fails to show that Defendants' conduct amounted to more than ordinary lack of due care for his interests or safety. See, e.g., Busch v. Morris, 103 Fed. App'x. 69, at *1 (8th Cir. Jul. 26, 2004)("[E]ven if defendants knew inmates could be injured from using wood thicker than 1 inch in the drill press, this knowledge was insufficient to find defendants were deliberately indifferent to a serious issue of workplace safety."); Warren v. Missouri, 995 F.2d 130 (8th Cir. 1993)(allegations by inmate that he injured his wrist while operating a table saw to which prison officials failed to add a safety device, despite knowledge of similar injuries in the past, fell short of creating a genuine issue of deliberate indifference to a serious issue of workplace safety); Bibbs v.

Armontrout, 943 F.2d 26, 27 (8th Cir. 1991), cert. denied, 502 U.S. 1110 (1992)(holding that an inmate essentially complained of negligence, where the inmate alleged that he lost portions of two fingers in the gears of a machine, after prison officials ignored the fact that guards covering the gears had been removed); Brent v. McQuiggin, No. 2:09-cv-168, 2010 WL 3720010, at *4 (W.D.Mich. Sept. 17, 2010)(prisoner's allegations that finger was cut off in meat/bread machine because he was not properly trained and was not given the required gloves did not amount to a constitutional violation); Webb v. Lappin, No. 1:07cv1203 (LO/BRP), 2008 WL 4360995, at *7-8 (E.D.Va. Sept. 22, 2008)(Inmate sustained injuries from removing canisters from trash can and later while driving a forklift. No constitutional violation by prison officials was found even though unit manager knew that two inmates had been sent to the medical department for problems with their eyes and throats after being exposed to the canisters, and a supervisor told the inmate to use the forklift even after the inmate complained of eye problems); Arnold, 843 F.Supp. at 113 (holding that an inmate's evidence was, at best, sufficient to go forward on a claim for negligence, where the inmate was severely burned by a malfunctioning steam pot, and the inmate alleged that his kitchen supervisors were aware of the pot's faulty condition).

This action can be distinguished from cases where courts have determined that the particular labor required of an inmate may have violated the Eighth Amendment. Those cases, in contrast to the present action, involved prison officials who both allegedly knew that the inmate faced a substantial risk of serious harm and disregarded the risk by failing to take reasonable measures to abate that risk. See, e.g., Ambrose v. Young, 474 F.3d 1070, 1078 (8th Cir. 2007)(concluding that defendant was not entitled to qualified immunity, where he required inmate to stomp out a fire burning near a dangling live power line that was a known substantial risk); Hall v. Bennett, 379 F.3d

462, 464-65 (7th Cir. 2004)(genuine issues of material fact existed as to whether supervisors knew that inmate could suffer a severe electrical shock as a consequence of working on a live wire without protective gloves where inmate claims he was refused protective gloves by one defendant, another defendant would not turn off the power, and defendants had no reason to believe that the inmate was adequately trained or fully qualified as an electrician); Sanchez v. Taggart, 144 F.3d 1154, 1156 (8th Cir.1998)(issues of fact precluding summary judgment were found where inmate was required to assist in sandbagging duty, although the defendant knew the prior day the same duty had caused the inmate to re-injure his back to the extent that he could not stand and had required medical attention including pain medication); Gill v. Mooney, 824 F.2d 192 (2d Cir.1989)(officer required inmate to continue working on a defective ladder even though the officer knew the ladder was unsafe).

At most, Plaintiff appears to have stated a claim for negligence on the part of Defendants. Negligence, in general, is not actionable under 42 U.S.C. § 1983 or Bivens. See Daniels v. Williams, 474 U.S. 327, 238-36 & n. 3 (1986); Ruefly v. Landon, 825 F.2d 792, 798-94 (4th Cir. 1987); Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995). Courts have failed to find Eighth Amendment violations where the facts suggested that the defendants sued were perhaps negligent, but were not deliberately indifferent. See, e.g., Franklin v. Kansas Dep't. of Corrs., 160 Fed. App'x. 730, 736 (10th Cir. 2005) (holding that even assuming that the risk to the prisoner of a back injury from improperly lifting heavy objects was objectively serious, the allegations at most showed that prison officials may have been negligent, and the failure to ensure that inmates were properly informed of proper lifting techniques was not deliberate indifference); Stephens v. Johnson, 83 F.3d 198, 200-201 (8th Cir.1996)(failure to provide steel-toed boots and other safety equipment was negligence, not deliberate indifference).

12

In his memorandum in opposition to summary judgment, Plaintiff claims that Defendants are in violation of the Bureau of Prisons "Policy Statement 1600.09 Subject 'Occupational Safety, E[n]vironmental Compliance, and Fire Protection.[']". Doc. 71 at 13. This claim was not brought in the Complaint. Even if such a claim has been properly plead, allegations that a defendant did not follow SCDC policies or procedures, standing alone, do not amount to constitutional violations. See United States v. Caceres, 440 U.S. 741 (1978); see also Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990)(if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue); Keeler v. Pea, 782 F. Supp. 42, 44 (D.S.C. 1992)(violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).[10]

## CONCLUSION

Based on review of the record, it is recommended that Defendants' motion for summary judgment (Doc. 64) be **granted**.

Joseph R. McCrorey
United States Magistrate Judge

June 14, 2012
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice**.

---

[10]Further, the Eighth Amendment generally does not constitutionally embrace workplace safety regulations. French v. Owens, 777 F.2d 1250, 1257 (7th Cir.1985). A lack of workplace safety policies or training does not necessarily establish deliberate indifference. Stephens v. Johnson, 83 F.3d 198, 200–201 (8th Cir.1996).

13

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).